## Commonwealth v. Cogley

*Merrill W. Kerlin, District Attorney,* for Commonwealth.

*Albert Foster,* for defendant.

MACPHAIL, P. J., June 26, 1968.—This defendant, a resident of Ohio, was tried without a jury on a charge of operating a motor vehicle upon the highways of this Commonwealth after his license was suspended: Section 1432 (a) of The Vehicle Code of April 29, 1959, P. L. 58, 75 PS §1432(a).

At the trial the testimony developed that defendant's operating privileges were suspended by the Pennsylvania Department of Revenue on October 13, 1959, when defendant's automobile insurance ran out and he was unable to maintain proof of financial responsibility. Defendant moved to Ohio and acquired an Ohio operator's license. He was arrested for speeding on September 17, 1967, on the Pennsylvania Turnpike

while he was operating a truck tractor. At the time of his arrest defendant had an Ohio operator's license but when the matter of defendant's operating privileges was checked with the Department of Revenue, the arresting officer was informed that those privileges had been suspended in 1959 for failure to maintain financial responsibility and that such privileges had not been reinstated.

Those facts were not disputed by defendant who testified in his own behalf. However, defendant also testified that in 1965, also while he was a resident of Ohio, he was arrested in Pennsylvania for speeding. At that time he exhibited his Ohio operator's license. Defendant then offered in evidence a letter from the Department of Revenue, dated February 18, 1966, which stated that "Your operating privileges are restored pending a departmental hearing". There is nothing in the evidence to indicate that such a hearing was held, but on October 25, 1967, the Bureau of Traffic Safety notified defendant that his operating privileges were restored as of October 25, 1967, and under the same date the bureau notified defendant that it was relieving defendant of further filing of proof of financial responsibility. However, it is to be noted that the latter two communications were received *after* the date of the present offense and, therefore, could have no possible bearing upon the outcome of the issue now before us.

While defendant, in effect, says that the responsibility for his present predicament must be placed upon poor clerical research in the Bureau of Traffic Safety, it does not escape our attention that defendant used two names: "Jack Eugene Cogley" and "Jack E. Cogley". His operating privileges were suspended in 1959 under the name of Jack E. Cogley, while the proceedings before the bureau in 1966 and 1967 were conducted under the name of Jack Eugene Cogley, presumably

because that was the name on his Ohio operator's license. While we are inclined to accept defendant's statement that he often interchanged his middle name and his middle initial, and that this was not done for any evil purpose, it could well be that defendant even unintentionally is the architect of his own problem.

In any event, as the record now stands, the only issue to be decided by this court is whether or not defendant was operating a vehicle in Pennsylvania after his license had been suspended. Opportunity was given to counsel to file briefs with the court.

Had the arrest occurred after defendant received the October 25, 1967, communications from the bureau, the result of this case might well be different. However, the only evidence in the case now bearing upon the question of whether or not the operating privileges of Jack Eugene Cogley had been restored prior to September 17, 1967, is the communication from the bureau dated February 18, 1966. It is quite obvious to us that that communication had nothing to do with the 1959 suspension order and, further, we believe defendant knew, or should have known, that it had nothing to do with that order. As a matter of fact, the "restoration order" dated February 18, 1966, plainly shows on its face that the reason for withdrawal was "Speeding, Section 1002(B) (6), 66/50, 12-5-65". It is also noted on that form that the order applies to "reciprocity privileges". At the time of that communication the department then had before it a speeding violation for a nonresident with a valid Ohio operator's license under the name of Jack E. Cogley and nothing more.

It has been held that the restoration of motor vehicle operating privileges is not automatic and that before they are restored the operator must take affirmative steps to have his privilege to drive reinstated: Commonwealth v. Stodder, 27 D. & C. 2d. 327 (1962). Here, defendant did nothing to have his privileges re-

stored. Instead, he took up his residence in another State where he obtained an operator's license. He was under no illusion then concerning the fact that his operating privileges in Pennsylvania had been suspended, since he mailed his license to the bureau, and when he undertook to drive in Pennsylvania he knew, or should have known, he was doing so unlawfully. Whether or not defendant could legally qualify for an operator's license in the State of Ohio is immaterial.

We are satisfied that the failure of the Bureau of Traffic Safety to identify defendant in 1966 with the suspension order entered in 1959 does not raise a reasonable doubt as to defendant's guilt with respect to the offense now under consideration and we are equally certain that the department's order of February 18, 1966, did not and was not intended to affect the suspension order entered October 13, 1959.

### ORDER OF COURT

And now, this June 26, 1968, the judgment of the court is that defendant is guilty as charged. Defendant is directed to appear for sentence at the call of the district attorney.